# BEULAJEAN MAXWELL, Appellant, *v.*
# VERNON AMARAL, Respondent.

Nos. 4599 and 4600
(Cross-appeals)

June 28, 1963          383 P.2d 365

*Nada Novakovich,* of Reno, for Maxwell.

*Pike & McLaughlin,* and *William N. Dunseath,* for Amaral.

## O P I N I O N

By the Court, THOMPSON, J.:

This is a guest-host case (NRS 41.180) in which the guest Maxwell asks damages from her host Amaral for personal injuries sustained in a one car accident. The claimed basis for the host's liability is gross negligence. At the close of the case the host moved for a directed verdict (NRCP 50), contending that gross negligence had not been shown as a matter of law. His motion was denied. The lower court reasoned that the issue was one concerning which reasonable minds might differ (Kuser v. Barengo, 70 Nev. 66, 254 P.2d 447; Troop v. Young, 75 Nev. 434, 345 P.2d 226) and was, therefore, a jury question. The jury returned its verdict for the host.[1] The guest appeals. We are requested to announce that the uncontradicted evidence of the host's conduct is of such a character as to establish his gross negligence as a matter of law, thus justifying remand for a new trial, presumably limited to the issue of damages only. We decline to do so.

1. In brief, the accident was caused by the host falling asleep while driving. The authorities regarding such an event are collected at 28 A.L.R.2d 12. It is

---

[1]The general verdict was accompanied by the jury's answers to written interrogatories on issues of fact. It found that: (a) Maxwell was a guest; (b) Amaral was negligent; (c) Amaral was not grossly negligent; (d) Maxwell was contributorily negligent. Though Maxwell assigns as error the jury finding that she was contributorily negligent, we do not consider it because it has no bearing on the disposition of this appeal.

there stated (p. 60), "The numerous cases in which courts have considered the question whether falling asleep is in itself gross negligence are almost unanimously to the effect that the fact of falling asleep while driving is sufficient to establish a prima facie case of ordinary negligence only, but that it is not sufficient to take the case to the jury on the question of the operator's gross negligence." At p. 62 "While the mere fact of falling asleep while driving does not give rise to an inference of gross negligence, the courts unanimously agree that the driver of an automobile who falls asleep while driving is grossly negligent if he had some prior warning of the likelihood of his going to sleep." The driver's forseeability of the likelihood of his falling asleep appears to be the relevant inquiry when his liability rests upon gross negligence. Here the guest does not dispute the general rules just mentioned. However, she does contend that the host should have foreseen the likelihood of his falling asleep, and that there is no room for a difference of opinion among reasonable people on this issue. We therefore turn to focus our attention on the facts relevant to this narrow issue of foreseeability.

The accident occurred on Sunday, August 25, 1957, some time between 5:30 and 6:30 a. m. On the preceding Friday, August 23, the host had worked a full shift at his place of business in Walnut Creek, California, after which he had attended a party, arriving home about 3:00 a. m., August 24. He slept for three or four hours, and then drove to Lake Tahoe. He intended to participate in the Minden, Nevada drag races on Sunday, August 25. He sought sleeping quarters near the Stateline, southeast Lake Tahoe, but without success. He ate dinner at Harrah's, and thereafter visited night clubs in the area. During the early morning of August 25 he met Beulajean Maxwell. They conversed, and danced together several times. Around 5:00 a. m. he asked if he might drive her home.[2] She

---

[2] As to this the evidence is in conflict. However, it has no bearing on the issue posed on this appeal, the jury having found Maxwell to be a guest, which finding is not here questioned.

accompanied him. On the journey he fell asleep, his car crossed over the opposing traffic lane, continued down an embankment and came to rest when it struck a tree. The host admitted that he was tired before getting into his car to drive his guest to her home, and that he had consumed six or seven Bourbon highballs during the evening and morning preceding the accident. His blood alcohol after the accident (exact time unknown) was .124. The guest stated that her host was driving properly and correctly before the accident. The host testified that, "If I had any idea I was going to fall asleep, I would have pulled off and stopped."

Here the guest contends that the modicum of sleep enjoyed by her tired host (only three to four hours of sleep within the 48 hours before the accident), his consumption of alcohol and strenuous activity, conclusively prove that he (the host) must have foreseen the likelihood of falling asleep at the wheel. Such circumstances are evidence of foreseeability, and afford a solid basis for jury argument. However, in our view, the argument is, indeed, one tailored for jury consumption rather than ours. It is opposed on the record in this case by the host's self-serving declaration that he had no prior warning of sleep, and the guest's acknowledgment that his driving was proper and not erratic up to the time of the accident. Presumably each argument was appropriately put to the jury by the contending parties.[3] It is manifest that whether the host should have foreseen the likelihood of falling asleep or dozing off while driving was an arguable issue, one concerning which reasonable men could differ. It was properly given to the jury for decision. Cf. Kuser v. Barengo, 70 Nev. 66, 254 P.2d 447; Troop v. Young, 75 Nev. 434, 345 P.2d 226; Garland v. Greenspan, 74 Nev. 88, 323 P.2d 27 (a non-jury case).

---

[3]It is of interest to note that the guest opposed the host's motion for a directed verdict, arguing that the issue of gross negligence was one of fact for the jury to decide, a position opposite to the one she assumes on this appeal.

The case of Heric v. Christensen, 73 Nev. 6, 306 P.2d 769, relied upon by the guest, does not aid her. In Heric this court, upon review of the record, decided that there was substantial evidence to support the jury verdict for the defendant in a rear-end collision case. We reach the same conclusion here, i.e., that there was a factual issue for jury determination, and that its determination for the host-defendant finds support in the evidence.

2. Following trial the prevailing party (the host Amaral) filed a cost bill (NRS 18.110). His opponent filed a motion to retax costs, objecting to three of the listed items. The motion to retax was granted. By cross-appeal the host asks that we review this ruling.

The questioned items are: First, the cost of the original deposition of the guest-plaintiff, which deposition was published during trial and used by defense counsel for impeachment of the guest-plaintiff during cross examination; Second, the cost of a copy of the deposition of the host-defendant, which was used by his counsel only to follow the deponent's answers to deposition questions read by plaintiff's counsel while cross examining the host-defendant; and, Third, the cost of obtaining a written medical report from the doctor selected to conduct an independent medical examination of the guest-plaintiff. The doctor was not available to testify at the trial and his written report, by stipulation, was received in evidence in lieu of testimony.

By statute a prevailing defendant may recover "his costs and necessary disbursements in the action." (NRS 18.010, 18.020, 18.040.) However, no specific provision as to depositions, written independent medical reports (and, indeed, many other recurring cost bill items) is contained therein. Consequently, trial courts have been plagued with motions to retax, and an understandable lack of uniformity in ruling upon them (what is a "necessary disbursement?") has resulted. It appears to us that predictability in this area is desired by the trial courts and the trial bar. To that end we propose to establish workable rules with regard to the questioned items here involved.

(a) *Depositions.* Since the adoption of the Nevada Rules of Civil Procedure we have twice considered the cost of depositions as a recoverable item by the prevailing party, Scott v. Smith, 73 Nev. 158, 311 P.2d 731; Armstrong v. Onufrock, 75 Nev. 342, 341 P.2d 105, 76 A.L.R.2d 946. In Scott v. Smith, supra, it was held that the trial court, in its discretion, could permit the prevailing party to recover the cost of depositions if "trial use" was made of them. The "trial use" there involved was twofold, to correct an answer of a witness and to refresh his recollection. In Armstrong v. Onufrock, supra, we held that the cost of a deposition taken for discovery only was not recoverable by the prevailing party.

NRCP 26(a) provides that a deposition may be taken for discovery, for use as evidence, or both. See also NRCP 26(a)(e). NRCP 26(d) provides, inter alia, that a deposition may be used against any party who was present at its taking to contradict or impeach the testimony of a deponent as a witness. NRCP 30 contemplates that the deponent shall sign the original deposition (unless signature is waived, or the deponent is ill, or cannot be found, or refuses to sign), the officer before whom it is taken shall certify that the witness was duly sworn and that the deposition is a true record of his testimony, and shall seal and file it with the court wherein the action is pending. These rules and NRS 18.010, when read together, reasonably lead us to conclude that a "necessary disbursement" within NRS 18.010 occurs when the original deposition of a party, or a witness who is not a party, is filed with the court (NRCP 30), published during trial and used therein, either as direct evidence (NRCP 26(a)(e)), or to impeach or contradict the testimony of the deponent as a witness (NRCP 26(d)), or to refresh the recollection of the witness (Scott v. Smith, supra). We expressly overrule that portion of the holding of the Scott v. Smith case, supra, which invests the trial court with a discretion to decide whether deposition expense is a necessary disbursement, believing that predictability is of paramount concern. Accordingly, with regard

to the deposition cost items here involved we hold that: 1. The prevailing defendant is entitled to recover the cost of the original deposition of the plaintiff, which deposition was filed with the court, published during trial, and used by the defendant to impeach or contradict the plaintiff's testimony. 2. The prevailing defendant may not recover the cost of a copy of his own deposition.

(b) *Written Medical Report.* Here, as in most personal injury litigation, an independent medical examination of the plaintiff-guest was requested and obtained. (NRCP 35.) The doctor charged $60 for his examination and written report thereof. The doctor did not testify, being unavailable at the time of trial. By stipulation his written report was received in evidence. The prevailing defendant-host contends that, under these circumstances, he should be allowed to recover such expense as a necessary disbursement, reasoning that the written report served the function of a witness. (NRS 18.110 (2).) We do not agree. A written report is not a "witness" within the purview of the statute, nor is it the deposition of a witness. The securing of it was a pre-trial discovery procedure (cf. Armstrong v. Onufrock, supra) undertaken with full knowledge that the report could not, in the absence of benevolent stipulation, qualify for introduction as evidence during trial (though available to the opponent for impeachment, etc., should the writer testify). Had a stipulation not been made for the introduction of the report into evidence, its cost would not be recoverable. We perceive no valid reason for a different result here.

We conclude that the judgment on the merits must be affirmed. The order granting the guest-plaintiff's motion to retax costs is modified to permit the host-defendant to recover the cost of the original deposition of the plaintiff which was published and used during trial.

BADT, C. J., and MCNAMEE, J., concur.