ROUSE ET AL., APPELLANTS, *v.*
RIVERSIDE METHODIST HOSPITAL,
ET AL. APPELLEES.

(No. 81AP-966—Decided April 12, 1983.)

*Mr. Franklin T. Gerlach,* for appellants.

*Messrs. Bricker & Eckler, Mr. Gerald L. Draper* and *Mr. Bruce G. Lynn,* for appellee Riverside Methodist Hospital.

*Messrs. Knepper, White, Arter & Hadden, Mr. Richard L. Miller* and *Mr. Charles R. Janes,* for appellee Donna Fahey, executrix.

WHITESIDE, P.J. Plaintiffs appeal from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff Lisa Rouse upon a verdict for $250,000 compensatory damages as against defendant Riverside Methodist Hospital but otherwise in favor of defendants. In support of their appeal, plaintiffs have raised nine assignments of error, as follows:

"1. The trial court erred in prohibiting appellants from presenting any testimony to the jury on punitive damage issues plead in this complaint against Riverside Methodist Hospital on issue of the hospital's total failure to assure proper calibration of its Cobalt 60 unit, which failure was so inadequate as to manifest a flagrant indifference to the probability that overradition [*sic*] or underradiation would expose its patients to unreasonable risk of harm, and further failing to determine causes of unusual patient reactions and autopsy reports of overradiation, and in failing to assure proper delivery of planned doses of radiation to its patients, and upon discovering overradiation its attempts to conceal facts from appellants by false information conveyed to physicians consulted by appellants causing emotional distress.

"2. The court erred in failing to grant a new trial upon newly discovered evidence of a mutual mistake of physical condition of Lisa Rouse.

"3. Verdict was against the weight of the evidence and verdict was contrary to law.

"4. The court erred in its instructions to the jury.

"5. The court erred in taking from jury the matter of compensation of Judy Rouse for extraordinary nursing services.

"6. It was error for the jury to fail to grant damages to plaintiff Judy Rouse

and was against the weight of the evidence.

"7. Mutual mistake ´ of fact of medical experts.

"8. The court erred in allowing Dr. Carl Bogardus, medical expert for Dr. Fahey, to testify as to appropriate method of treatment of the tumor that Lisa had and in failing to strike his testimony when Dr. Bogardus could not name any radiation therapist nor center that would use whole brain radiation on a child of Lisa's age with the type and location of tumor she had.

"9. The court erred in refusing proferred [*sic*] testimony of Dr. Sayers as to life expectancy of Lisa if tumor was removed by surgical technique."

Plaintiff Lisa Rouse, at the age of nine, developed a brain tumor which was malignant. Surgery resulted in removal of only approximately eighty percent of the tumor mass, and radiation therapy was prescribed. Due to a miscalculation by the physicist who calibrated the radiation equipment, the radiation was considerably in excess of that which was prescribed. Defendant Dr. Fahey prescribed the radiation for the entire brain, rather than concentrating it at the site of the residual tumor. There was conflicting expert testimony as to whether, at the time in question, whole-brain radiation was appropriate medical therapy. There was also conflicting medical expert testimony as to the amount of radiation that would be appropriate and as to the effects of excess radiation.

In any event, allegedly, solely as the result of the radium overdose as well as the whole-brain radiation, plaintiff Lisa Rouse lost her hair, sustained stunted growth, impediment of speech and became a quadriplegic paralytic with loss of intellectual functions.

The first assignment of error pertains to the issue of punitive damages. The trial court removed the issue of punitive damages from consideration of the jury, finding that punitive damages could not be awarded under the circumstances of this case.

In 1976, defendant hospital discovered that the output of the radiation therapy unit was much higher than the calculations being made by its physicist, Joel Axt, who has not been joined as a party to this case. Due to this calibration error, plaintiff Lisa Rouse received approximately eighteen percent more radiation than prescribed. As soon as the error was discovered, defendant hospital notified the public of the error. There is no doubt of defendant hospital's responsibility for this error, and the jury awarded the compensatory damages of $250,000 to plaintiff Lisa Rouse predicated thereon.

Plaintiffs contend that, because of the great danger posed by overradiation, the conduct of negligent calibration is of such a nature as to be intentional, reckless, wanton, willful and gross and egregious as to safety of patients as to permit an inference of actual malice and the award of punitive damages. We disagree. Plaintiffs rely upon the third paragraph of the syllabus in *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456 [21 O.O.3d 285], which states:

"Punitive damages may be awarded where a manufacturer's testing and examination procedures for a product are so inadequate as to manifest a flagrant indifference to the probability that the product might expose consumers to unreasonable risks of harm."

In *Leichtamer,* however, the manufacturer was aware of the defects in its product and the limitations upon its safe use but continued to advertise the product, a Jeep CJ-7 four-wheel drive motor vehicle, as being capable of performance which the manufacturer either knew the vehicle could not do or failed to test to ascertain the safety, even though. the Jeeps were extremely dangerous.

Here, it is not a matter of failing to make tests but, rather, an error in a mathematical calculation, which resulted in excessive radiation.

There is a lack of specificity in plaintiffs' contentions in that they have not set forth any express ruling by the trial court which forms the basis of this assignment of error. However, plaintiffs appear to contend that an award of punitive damages should be predicated upon: (1) alleged negligence of defendant hospital in the hiring of the physicist; (2) conduct by the physicist so gross as to give rise to punitive damages; and (3) alleged fraud on the part of defendant hospital in reporting to plaintiff Lisa Rouse's mother and physician that she had received less than ten percent excess radiation, when actually she had received sixteen percent excess radiation. None of these is sufficient to constitute a basis for the award of punitive damages. As the Supreme Court stated in *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134 [24 O.O.3d 239], at pages 137-139:

"Actual malice is required for a question of punitive damages to be submitted to a jury. * * *

"* * *

"An act of mere negligence does not, of itself, demonstrate the degree of intention and deliberation necessary to raise a question of punitive damages. * * * '* * * There must be circumstances of aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called wilful or wanton. Lacking this element, there is general agreement that mere negligence is not enough, even though it is so extreme in degree as to be characterized as "gross" * * *.' Prosser on Torts (4 Ed.), at pages 9-10.

"* * * While reckless disregard is recognized as a basis for punitive damages * * * appellant overlooks the conceptual requirement of intention or deliberation implicit within the Ohio definition of malice. * * *"

As in *Detling*, "[t]he record in the case *sub judice* reveals no surrounding circumstances which demonstrate the requisite intention or deliberation sufficient to raise a jury question of malice." *Id.* at 139. Nor have plaintiffs specified any evidence which is demonstrated to have been excluded by the trial court erroneously and which would have tended to prove the requisite intention or deliberation necessary to raise a question of malice.

As to the employment of the physicist, there is no suggestion that defendant hospital knew he was not qualified when he was employed. As to the second contention, no evidence was offered which would have tended to prove that the physicist knew that his method of calibrating was so erroneous that it would expose patients to excess radiation. In other words, there is no indication here that the physicist, much less defendant hospital, knew that it was even possible that the calibrations were inaccurate until they were eventually discovered and corrected. Likewise, there is no evidence that defendant hospital authorized or participated in or ratified any act of the physicist, although it is responsible for his negligence on the doctrine of *respondeat superior*.

As to the third contention, there was no evidence of fraud. Rather, there was evidence of a further mistake on the part of defendant hospital, which in good faith gave certain information concerning the amount of overradiation, not realizing at the time the extent of the excess radiation. However, even assuming that defendant hospital knew after the fact that the excess radiation was sixteen percent, rather than ten percent, and gave improper advice or information to plaintiff Lisa Rouse's mother and doctor, this does not afford a basis for punitive damages. The ·injury was caused by the excess radiation, not by the later indication of the extent thereof. In other words, later concealment of evidence of negligence does not render the act which constituted the negligence, malicious since, of neces-

sity, the negligent act must have been performed negligently before there can be any concealment thereof. In other words, malice deals with the manner in which the act is performed at the time that it is performed. Later acts do not make a former act malicious when it was not malicious at the time that it was done.

Thus, two essential elements of fraud, much less malicious fraud, are absent with respect to the excess radiation; namely, the alleged fraud was not made with the intention to induce plaintiff to submit to the radiation, and plaintiffs did not rely upon the alleged fraud in submitting to the alleged misrepresentation. In other words, any misrepresentation was after the fact, not before the fact. While the alleged misrepresentation may have intended to induce plaintiffs not to take action against the hospital, it was not an inducement to submission to the excess radiation, and there is no indication that any such alleged fraud was made maliciously. Accordingly, the first assignment of error is not well-taken.

By the second assignment of error, plaintiffs contend that the trial court erred in overruling plaintiffs' motion for a new trial upon the ground of newly discovered evidence. We find no merit to this assignment of error. Basically, plaintiffs contend that the trial court should have sustained a motion for a new trial because of evidence obtained after the trial that Lisa's medical problems were caused by radiation necrosis, rather than tumor growth. The jury found that Lisa's life expectancy was one year. Plaintiffs contend that this finding was obviously erroneous in view of this additional medical evidence. Whether or not to grant a new trial under such circumstances is a matter lying within the sound discretion of the trial court. Here, in light of all the underlying circumstances, we find no abuse of discretion. Accordingly, the second assignment of error is not well-taken.

The third assignment of error raises the issue of manifest weight of the evidence. In this regard, plaintiffs' argument centers primarily around the alleged negligence of Dr. Fahey in ordering whole-brain radiation administered as treatment and the alleged resultant liability of his estate and defendant hospital. The jury expressly found in favor of Dr. Fahey's estate, which would be appropriate only if they found him not to be negligent.

There is nothing in the record itself to suggest that the jury in returning a verdict in favor of Dr. Fahey's estate did so out of sympathy for his widow, not wanting her to lose her home. Plaintiff Judy Rouse, by affidavit filed in connection with a motion for new trial, made such an allegation, but it is not an appropriate basis for error under the circumstances.

In addition, there was ample evidence to support the jury verdicts, even though there was also evidence from which the jury could have found in favor of plaintiffs upon the issue of Dr. Fahey's negligence.

The alleged negligence as against Dr. Fahey was the giving of the whole-brain radiation and the failure to make an independent determination as to the calibration of the equipment. In returning a verdict in favor of Dr. Fahey's estate, the jury necessarily found either that he was not negligent or that any negligence was not a proximate cause of plaintiff's injuries. There was evidence to support either of these theories. While two doctors testified that the giving of whole-brain radiation under the circumstances constitutes negligence, four doctors testified that it was not negligence at the time in question. There was also expert testimony that a doctor in the position of Dr. Fahey was justified in relying upon the measurements and calibrations made by a physicist.

A reviewing court may not set aside a judgment upon a jury verdict as being against the manifest weight of the evidence if it be supported by competent, credible evidence. *C. E. Morris Co.* v.

*Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. The verdict in this case was so supported, even assuming that the jury could have found for plaintiffs. Accordingly, the third assignment of error is not well-taken.

By the fourth assignment of error, plaintiffs contend that the trial court erred in its instructions to the jury in numerous respects. The first relates to the duty of care with respect to a dangerous instrumentality. The second related to agency, as did the sixth. The eighth related to circumstantial evidence and inferences, and the ninth related to departure from accepted medical practice and proximate cause. The sixteenth related to joint tortfeasors, the seventeenth and eighteenth related to independent contractors appearing upon defendant hospital's alleged liability for negligence of Dr. Fahey, and the twentieth and twenty-first were somewhat similar to the sixteenth. No prejudice has been demonstrated with respect to any of these requested charges, even assuming that they were appropriate. Defendant hospital admitted negligence with respect to the physicist, and the jury found in favor of the Estate of Dr. Fahey upon the issue of his negligence. Thus, the requested instructions with respect to agency have no bearing, since the jury never reached that issue. While the sixth request related to alleged negligence of Dr. Fahey for the actions of the physicist, plaintiffs have not demonstrated that a correct statement of law is involved, and there was ample evidence to the contrary. Since defendant hospital admitted negligence with respect to the physicist, no charge with respect to its negligence was necessary.

The twelfth, thirteenth, fourteenth and fifteenth requests related to agency, upon which issue the trial court did give an instruction, and plaintiffs have not demonstrated any error in the instruction as given by the trial court or how they were prejudiced by the failure to amplify that charge. These also related to the alleged failure of Dr. Fahey to double check the measurements and calibrations of the physicist, as to which there was ample evidence no duty existed. The twentieth and twenty-first requests relate to apportionment of damages, which issue was never reached by the jury and as to which no error has been demonstrated.

The twenty-second request related to punitive damages, as to which there was no evidence. The twenty-ninth request related to mental anguish, and the thirtieth to emotional distress, while the thirty-second related to personality changes and loss of enjoyment of life and mental retardation. Further instruction concerning these issues was given to the jury before it retired, and no further objection was interposed.

Under these circumstances, we find no basis for error, nor have plaintiffs demonstrated any prejudice. The thirty-fourth request in actuality is an objection to the court's charge, which limited defendants' possible liability to damage caused by radiation, instructing the jury that the defendants are not responsible for the brain tumor itself and the damage produced by it. Any error in that portion which indicated defendant hospital was not liable for any negligence of Dr. Fahey cannot be prejudicial in light of the jury verdict in favor of Dr. Fahey's estate.

While the court's instructions may not have been perfect, plaintiffs have not demonstrated any prejudice resulting directly from any alleged error in the charge and have not indicated with specificity how the charge as given failed to state the proper law to the prejudice of plaintiffs, nor how amplification by the additions requested by plaintiffs would have effected a result favorable to plaintiffs. Since defendant hospital admitted liability for overradiation, the issue was only one of damages in that regard, with the remaining negligence issue being the alleged negligence of Dr. Fahey and the alleged imputation thereof to defendant

hospital. Under the circumstances, plaintiffs have not demonstrated any prejudicial error with respect to the court's instruction to the jury, and the fourth assignment of error is not well-taken.

The fifth assignment of error, however, raises a more vexing issue since the jury returned a verdict in favor of defendants as against plaintiff Judy Rouse for medical expenses for plaintiff Lisa Rouse. The fifth assignment of error specifically relates to the claim for extraordinary nursing services rendered for her daughter by plaintiff Judy Rouse, as to which the trial court instructed the jury no consideration could be given and as to which the trial court excluded evidence. Defendants rely upon *Griffen* v. *Cincinnati Realty Co.* (1913), 15 Ohio N. P. (N.S.) 123, in support of the trial court's holding. That case, however, held that a husband could not recover for his wife's nursing services gratuitously furnished him because of an injury resulting from negligence of another and held that the wife could not recover for her lost earnings because she quit her job to nurse her husband. The precise issue involved here was not involved in *Griffen.* Nor was it involved in *Bowe* v. *Bowe* (1903), 5 Ohio C. C. (N.S.) 233, which also held that a plaintiff in a negligence action could not recover for the value of nursing services furnished him gratuitously by his mother. In *Cincinnati Omnibus Co.* v. *Kuhnell* (1884), 9 Ohio Dec. Rep. 197, it was held that the trial court erred in charging in a negligence action that a mother could recover for the loss of her time in nursing her son instead of earning money but suggesting that she could recover for the value of the nursing services rendered to her son.

On the other hand, in *Klein* v. *Thompson* (1869), 19 Ohio St. 569, it was held that, in an assault and battery case, the plaintiff could recover for the amount of a surgeon's bill, even though he had no legal liability to pay the bill since it had been voluntarily paid by a third party. This, of course, is the foundation of the collateral source rule. See *Pryor* v. *Webber* (1970), 23 Ohio St. 2d 104 [52 O.O.2d 395]. Accordingly, there appears to be little authoritative Ohio case law upon the precise subject before us.

The two old lower court decisions relied upon by defendants appear to be contrary to the general rule in most jurisdictions. As stated in 59 American Jurisprudence 2d 222, Parent and Child, Section 120: "It is generally held that the parent may recover the reasonable value of the care or attendance which he himself renders to the child as a result of the injury. * * *" The issue is the subject of an Annotation in 90 A.L.R. 2d 1323. It appears that the vast majority of the jurisdictions which have considered the issue have found that a parent may recover for the value of nursing services, which the parent himself is required to furnish as the result of a negligent injury to the child. In *Johnson* v. *Rhuda* (1960), 156 Me. 370, 164 A.2d 675, 90 A.L.R. 2d 1314, the Maine Supreme Court held that the father of an injured child could recover for the value of the nursing services rendered to the child by its mother and his wife. In *Armstrong* v. *Onufrock* (1959), 75 Nev. 342, 341 P. 2d 105, 76 A.L.R. 2d 946, the Nevada Supreme Court reached a similar conclusion, permitting the mother to recover for the reasonable value of the nursing services she rendered to her injured child. In *Scanlon* v. *Kansas City* (1935), 336 Mo. 1058, 81 S.W. 2d 939, the Missouri Supreme Court outlined the philosophy behind allowing recovery as medical expenses of the reasonable value of nursing care rendered to a child, stating in part, at pages 1067-1068:

"Appellant's theory is that the father would be entitled to recover for any money actually paid out or expense incurred for care and nursing, but is not entitled to recover for the services which he himself rendered in that regard. In support of this contention, appellant invokes

the rule that service rendered by one member of a family to another, in the absence of a contract for compensation, is presumed to be gratuitous. This rule is settled law, but it has no application to the facts of this case. * * * This is a suit by the father, not against the son, but against a wrongdoer to recover damages which he has suffered because of the negligence of the wrongdoer. * * * In the instant case, the negligence of the defendant necessarily caused plaintiff to expend time and labor in caring for and nursing his son, and, for that reason, the defendant is liable to plaintiff therefor. * * *

"* * *

"Further contention is made that the father is not entitled to recover for services rendered his infant son, unless on account of such service the father lost wages from his regular employment. * * * There is no merit in this contention. The father being entitled to recover for the care and nursing of his son, the measure of his recovery is the reasonable value of the services rendered as care and nursing, regardless of the time and wages he may have lost by reason of enforced absence from his regular employment in order to look after and care for his son. * * *"

We find no reason why Ohio should not follow the same rule as most other states which have considered the issue and allow a parent to recover from the wrongdoer the reasonable value of the care or attendance which he himself renders to his child as the result of a negligent injury. Accordingly, the trial court erred in excluding from the jury evidence as to the reasonable value of the extraordinary nursing services rendered by plaintiff Judy Rouse to her daughter. Defendant contends that any error was not prejudicial because the jury returned a verdict in its favor as against plaintiff Judy Rouse. However, exclusion of the evidence as to damages necessarily was prejudicial under the circumstances, as will be more fully considered in connection with the next assignment of error.

Therefore the fifth assignment of error is well-taken with respect to defendant hospital.

Likewise, the sixth assignment of error is well-taken with respect to defendant hospital. It was inconsistent for the jury to find substantial damages resulting to plaintiff Lisa Rouse as a result of defendant hospital's negligence in administering excess radiation and at the same time to award no medical expenses for such injury.

There was substantial evidence of medical expenses. It was stipulated that plaintiffs' Exhibit 166 is the bills that plaintiff Judy Rouse paid for the care of plaintiff Lisa Rouse and that such bills were reasonable and necessary for the care of plaintiff Lisa Rouse. Defendants point out that they did not stipulate that all of the expenses were related to the excess radiation. However, it does appear that at least some of the medical expenses stipulated were related to radiation, such as those pertaining to loss of hair. There was also some evidence indicating a relationship between medical expenses and radiation.

Defendants correctly point out that there was no direct medical testimony that the medical bills were a direct result of the excess radiation. However, although not specifically assigned as error, the trial court excluded testimony on the issue from a medical expert, the trial court reasoning that a medical doctor who is a pathologist cannot testify upon the subject. The proffered answer was that the doctor would testify that the medical expenses bore a direct and causal relationship to the excess radiation. Under Ohio law, any doctor licensed to practice medicine is competent to testify on medical issues, including the relationship of medical expenses to a particular injury or cause. The fact that the doctor has a specialty of pathology, rather than some other specialty such as radiology, bears only upon the weight to be given the evidence, not its admissibility.

From the totality of the circumstances herein involved, we find that it was inconsistent for the jury to award $250,000 in compensatory damages to plaintiff Lisa Rouse and at the same time to award no medical expenses for her care, although we recognize the difficulty that the jury would have in separating the various items of medical expenses in allocating them on a causal relationship basis between services necessitated by the tumor itself and medical services necessitated by the excess radiation. The fact that it is difficult, however, does not make it any less error. On the other hand, this by no means suggests that all of the medical expenses must be found to be related to the excess radiation. Coupled with the error in connection with the fifth assignment of error and with unassigned error in excluding the testimony of the pathologist as to causal relationship, we find that the sixth assignment of error is well-taken.

We find no merit, however, to the seventh assignment of error. There was no mistake of fact on the part of medical experts. Also, the assignment of error is founded upon records presented at the hearing upon the motion for new trial rather than evidence adduced at the trial.

Likewise, we find no merit to the eighth assignment of error. Dr. Bogardus testified that Dr. Fahey had utilized an appropriate method of radiation treatment of the tumor but was not specific as to other institutions using similar treatment at the time in question, although he did indicate some institutions had utilized the technique at some time or another and was "willing to state" that a majority would use such technique "at sometime" under similar circumstances. Any weakness in Dr. Bogardus' opinion or testimony was a matter to be considered in determining the weight to be given to his

testimony and did not relate to admissibility of that testimony. We find no abuse of discretion on the part of the trial court in overruling plaintiffs' motion to strike that testimony.

Likewise, we find no prejudicial error with regard to the ninth assignment of error. The proffered answer by the witness related to possibilities, rather than medical probability. The doctor stated that it was "conceivable" that further surgery would prolong Lisa's life to such an extent that she could live a normal life span. *In toto,* we find no abuse of discretion such as to constitute prejudicial error.

For the foregoing reasons, the fifth and sixth assignments of error are sustained with respect to plaintiff Judy Rouse's claim against defendant Riverside Methodist Hospital but are overruled with respect to plaintiffs' claim against defendant Fahey, and all the remaining seven assignments of error are overruled; and the judgment of the Franklin County Court of Common Pleas is affirmed with respect to the judgment in favor of plaintiff Lisa Rouse against defendant Riverside Methodist Hospital and is affirmed with respect to the judgment in favor of defendant Executrix of the Estate of Dr. Fahey as against both plaintiffs, but is reversed with respect to the judgment in favor of defendant Riverside Methodist Hospital as against plaintiff Judy Rouse; and this cause is remanded for further proceedings upon the claim of plaintiff Judy Rouse against defendant Riverside Methodist Hospital in accordance with law and consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

MOYER and NORRIS, JJ., concur.